---

## FRAUDULENT CONVEYANCE.

---

PHŒNIX v. DEY, TAYLOR, and another, assignees of Ingraham, a bankrupt, 5 J. R, 412–430.

*Fraudulent Preference by Insolvent Debtor in alleged . Contemplation of Bankruptcy.*

APPEAL from the Court of Chancery. About the beginning of October, 1800, Ingraham the bankrupt became insolvent, and expressed his inability to pay his notes, which were protested for non payment. After his public declaration of his inability, he in October, November and December, 1800, made several assignments to individual creditors of lands, effects, and debts, and in particular he conveyed to the appellant, Phœnix, who was his father in law, lands, debts, and promissory notes, to a considerable amount.

A commission of *bankruptcy* issued against Ingraham, in 1801, under the United States act of bankruptcy then existing, and the respondents, Dey, &c., were appointed assignees, and received an assignment of the bankrupt's estate, in trust for his creditors. They, alleging that all the previous transfers, payments and assignments to the appellant, were made after I.'s known insolvency, when he had either committed or contemplated an act of bankruptcy, and were made with an intention to give the appellant an illegal preference, filed their bill for a general discovery, for an account, and for general relief against the appellant, and Ingraham and his wife.

The appellant in his answer. admitted the assignments, payments, &c., made to him, but denied that Ingraham committed an act of bankruptcy until February, 1801, and that

he did not know that he contemplated bankruptcy at the time the appellant took the securities; that he continued to do business until February, 1801; that on a former commission of bankruptcy against I., in 1800, an inquest was taken in the District Court of the United States, in December, 1800, to try the fact of bankruptcy, when a verdict was found disaffirming that fact.

Ingraham, examined as a witness, confirmed these facts. Two other depositions were taken of *two creditors* of I., one of whom when examined as to his credit, stated that he had stopped a sum due from the bankrupt and his partners, and he had supposed they had allowed it, but he was afterward informed by them that they would not allow the set-off. The other witness was a creditor of I. at his bankruptcy, and in 1802 was himself discharged as a bankrupt. The competency of the witnesses as well as of their testimony to prove the declaration of I., in regard to his insolvency, was argued by the counsel, and considered by the Court of Errors on the decision of the cause.

The Chancellor held that the assignments and payments and transfers of securities to Phœnix, were fraudulent as against the complainants, the assignees of Ingraham, and decreed that the appellant reconvey and deliver all the property, &c., and repay all monies, &c., to the complainants. From this decree, the defendant below appealed to this court.

The Court of Errors, Spencer, J., delivering the only opinion, held, 1. That Dickson, the witness discharged, appeared to be a competent witness, but that Prime the other, his responsibility not having been discharged, was not. 2. That even if they were both competent, there was not sufficient evidence to authorize the conclusion that *Ingraham contemplated an act of bankruptcy*, within the act of Congress, when he executed the conveyances, &c., and made the payments to the appellant, which the decree of the Chancellor had declared void. Spencer, J., says: "The most that can be deduced from the evidence is, that Ingraham was insolvent; but it expressly rejects the idea that the acts were done in contemplation of bankruptcy. Reference has been made to the answer of Ingraham, to impeach that part of his evi-

dence, which denies that what he did to secure the appellant was in contemplation of an act of bankruptcy; if it be admitted that his answer, and the declaration he made completely produce that effect, still the fact is to be made out *affirmatively*, that the preference was given to the appellant, in contemplation of bankruptcy. For, no proposition can be clearer, than that the answer of one defendant is not evidence against his co-defendant; and that the *declarations* of a party to a sale or transfer, going to take away and destroy the vested rights of another, can not, *ex post facto*, work that consequence nor be regarded as evidence against the vendee or assignee."

"There is no evidence of an act of bankruptcy contemplated, nor any circumstance from which to infer it, except the simple fact of his insolvency, and the court is without any evidence to show the nature and extent of this insolvency, and whether it was irretrievable and desperate or not."

"That insolvency is no objection to giving a preference, unless it be shown that a bankruptcy was contemplated at the time, was decided in the Supreme Court in the case of *McMennomy and Townsend* v. *Ferris*, (3 J. R. 82.) That principle will be found admitted and acted upon in a great variety of cases."

3. As to "how far forth payments obtained by a creditor on his application, after the debtor contemplates an act of bankruptcy but before one is, in fact, committed, are to be upheld, I confess I have little difficulty." And he cites *Hartshorne and another* v. *Slodden,* 2 B. and P. 586, to prove that where even the debt is not yet due, a preference thus obtained was valid, though the creditor knew the debtor was in failing circumstances, and that the motive of his conduct. Also, the case of *Thompson* v. *Freeman,* 1 T. R. 156.

Kent, Ch. J., was of the same opinion; Thompson and Yates absent.

Decree *reversed* unanimously.